## UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Farzad N. Khosravi | ) | |
| 1243 Mistletoe Court | ) | |
| Marco Island, Fl. 34145 | ) | |
| | ) | |
| Plaintiff, | ) | |
| *v.* | ) | **Case No.: 1:16-cv-2066** |
| | ) | |
| THE GOVERNMENT OF THE | ) | |
| ISLAMIC REPUBLIC OF IRAN, | ) | |
| Its Ministries, Agencies, and Instrumentalities | ) | |
| c/o Ministry of Foreign Affairs | ) | |
| Khomeni Avenue | ) | |
| United Nations Street | ) | |
| Tehran, Iran, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Farzad N. Khosravi complains of the actions of the Defendant, The Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities, and states in support thereof as follows:

## INTRODUCTION AND OVERVIEW

1.      Plaintiff Farzad N Khosravi ("Mr. Khosravi") escaped from the Islamic Republic of Iran in 1980 after he was arrested and prosecuted for his political ideologies.  He was granted political asylum in the United States in 1982 and lived here for more than 20 years.  In August of 2012, Mr. Khosravi decided to visit family members and friends in Iran for two months.  Shortly after landing at the terminal in Tehran, Iranian Government officials confiscated his passports. He was held captive in country without travel documents for the next 32 months.  In April of 2015, after getting assistance from a lawyer, Mr. Khosravi successfully obtained his passports from the Iranian government.  When Mr. Khosravi arrived at the Tehran airport to return to the

United States in May of 2015, he was abducted, beaten and confined in the notorious 209 Evin Prison.  He spent the next eight months in solitary confinement and was subjected to torture and degradation on a daily basis.  He was released from captivity in January of 2016 after the United States and Iranian government agreed to a prisoner swap.  The physical injury, mental anguish and pain inflicted upon Mr. Khosravi is significant and lasting.  He is filing this lawsuit for compensatory and punitive damages against the Islamic Republic of Iran and its agents, the men who unlawfully assaulted and tortured him for eight months.

## PARTIES

2.      Mr. Khosravi is a U.S. citizen and a current resident of Florida. Mr. Khosravi was falsely imprisoned and tortured for more than eight months by Defendant, The Government of the Islamic Republic of Iran, its Ministries, Agencies, and Instrumentalities ("Iran").

3.      Defendant, the government of the Islamic Republic of Iran, is a foreign sovereign, designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405(j)) both at the time of the matters at issue in this Complaint at the time this Complaint was filed. Its activities as complained of herein were outside the scope of immunity provided by the Foreign Sovereign Immunities Act ("FSIA"), including 28 U.S.C. § 1605A.

## JURISDICTION

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1330 and 1331, and pursuant to the FSIA, 28 U.S.C. § 1605A.

5.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4).

6.      Mr. Khosravi was domiciled in the State of Florida at the time of his confinement and torture.

## STATEMENT OF FACTS

7.     Mr. Khosravi was born in Tonekabon, Iran in 1959.  His father was a store owner in North Iran.  His mother was a homemaker.  At the age of 15, Mr. Khosravi earned a diploma in the trade of rug manufacturing in Iran.  To earn a living, he worked in his family store and made carpets prior to immigrating to the United States in 1983.

8.     In 1980, Mr. Khosravi was arrested because he openly opposed the Islamic Republic of Iran and its policies.  As a result of his political views, Mr. Khosravi was subjected to house arrest for a period of seven months.

9.     Despite being released from house arrest, Mr. Khosravi was constantly being harassed by Iranian government officials.  After enduring significant harassment from Iranian government officials for his political views, Mr. Khosravi decided to flee Iran in 1981.  He paid smugglers to help him escape from Iran and spent the next two years traveling through various countries, including Pakistan and Spain.  In September of 1983, he was granted political asylum in the United States with the help of the International Rescue Committee.  He subsequently moved to Atlanta, Georgia.  Mr. Khosravi became a United States Citizen in 1991.

10.     Mr. Khosravi spent the next 29 years living and working in Georgia and Florida. Mr. Khosravi lived in the United States between September of 1983 and August of 2012.   On August 26, 2012, Mr. Khosravi departed Florida to take a trip to Iran to visit family members and friends.  He planned to stay for about two months.

11.     When he arrived in Tehran, Iranian government officials seized Mr. Khosravi's passports as he attempted to exit the airport.  Instead of a brief stay in Iran, Mr. Khosravi spent close to 32 months trying to retrieve his travel documents from the Iranian government so he could return to the United States.

12.     In late April of 2015, with the help of legal counsel, Mr. Khosravi was given back his passport which had expired.  Mr. Khosravi reapplied for a new passport and was repeatedly interrogated by government officials before obtaining a new passport.

13.     Once he secured a new passport, he booked a ticket to travel to the United States. When Mr. Khosravi arrived at the airport on the day of his flight, May 12, 2015, he was told he not could leave Iran.  Three members of Iran's Ministry of Intelligence security agents dressed in plain clothes arrested him.  When he was asked why he was being arrested, he was initially told him he was being charged with murder.

14.     Mr. Khosravi was blindfolded, handcuffed and transported against his will.  He was later falsely accused of espionage.  Iranian agents asserted that Mr. Khosravi sent secret information to a hostile government – the United States of America.

15.     The day of his capture and false arrest, Mr. Khosravi was beaten to the point of losing consciousness.  He was not given medical attention.

16.     Mr. Khosravi was taken to 209 Evin Prison, an unofficial and secret detention centre in Tehran, Iran, that operates under the administration of VAJA, the Islamic Republic of Iran's Ministry of Intelligence.  He was placed in solitary confinement for eight months.  He resided in a rodent and bug infested three foot by five foot prison cell.

17.     During his eight months of captivity, Mr. Khosravi was subjected to routine torture during the day and night.   Mr. Khosravi was subjected to brutal beatings by agents of the Iran's Ministry of Intelligence.  The agents also subjected him to mental abuse and death threats. Mr. Khosravi was hit repeatedly with bats and hard metal objects.

18.     These physical torture sessions were intertwined with interrogation sessions.  Mr. Khosravi was interrogated for more than 65 hours.  During the interrogations, he was repeatedly shocked with an electric taser on his legs and head.

19.     Mr. Khosravi's physical and mental health deteriorated over the eight months and he was refused medical attention.  He was also not given proper nutrition.

20.     Mr. Khosravi was denied consular access to the U.S. Interests Section in Iran in violation of the Vienna Convention on Consular Relations.  He was not permitted to have regular contact with his family.

21.     Mr. Khosravi appeared in an Iranian court on three occasions.    On one occasion a judge ordered him to receive 80 lashes because Mr. Khosravi admitted during one of his torture sessions that he had previously consumed alcohol.

22.     On another occasions, Mr. Khosravi appeared before Iranian Judge Aboleqasem Salavati where he was told he would be given a death sentence.  On another occasion the judge accused Mr. Khosravi of being a spy for the United States.  His captors mocked Mr. Khosravi and asked him whether Mr. Khosravi had spoken to President Barack Obama and relayed that the judge was going to sentence him to death.  Mr. Khosravi's trial was scheduled for April 12, 2016.

23.     On January 17, 2016, Mr. Khosravi was released as part of a prisoner trade between Iran and the United States.  Iran released a total of five imprisoned Americans in exchange for clemency for seven Iranians indicted or imprisoned in the United States for sanctions violations. The prisoner trade also coincided with the release of certain frozen Iranian assets in the United States.

24.     As a result of his inhumane treatment at the hands of the Iranian government, Mr. Khosravi suffers from depression, anxiety and post-traumatic stress disorder (PTSD). Mr. Khosravi's confinement caused him severe and extreme psychological distress, both during his imprisonment and after his release.  Since returning home, Mr. Khosravi has suffered post-traumatic stress disorder and other lasting psychological damage from his captivity and torture.

25.     Mr. Khosravi has many physical ailments as a result of the abuse.  He now suffers from a nerve injury in his left leg.  His right shoulder is damaged.  His left eye is damaged and is severely impaired.  He has double vision and suffers from night blindness in that eye.  His right eye was also damaged.  He lost his sense of smell.  He suffers from headaches and migraines and a stomach ulcer.  He suffers from nightmares as a result of the beatings and torture and wakes up to fears of being tortured again.

## COUNT I

### (PERSONAL INJURIES CAUSED BY TORTURE AND HOSTAGE-TAKING: 28 U.S.C. § 1605A)

26.     Paragraphs 1 through 25 above are incorporated as if set forth herein.

27.     Mr. Khosravi was a citizen of the United States when arrested and held unlawfully by Iran. While being held, Mr. Khosravi was physically and psychologically tortured as described herein.

28.     Anti-terrorism provisions codified at 28 U.S.C. § 1605A(a) establish a federal right of action against Iran for committing acts of hostage-taking and torture.

29.     Section 1605A provides four elements for a claim against a foreign state, all of which are met here:

        a.      That defendant be designated as a state sponsor of terrorism;

        b.      That claimant be a national of the United States;

        c.      That the foreign country must be given reasonable opportunity to arbitrate that claim if the conduct took place on foreign soil; and

        d.      That the act alleged to be caused by "an act of torture, extrajudicial killing, aircraft sabotage,   hostage taking, or the provision of material support or resources for such an act . . . ."

30.     Iran was designated a state sponsor of terrorism by the Secretary of State on

January 19, 1984. *See* 49 Fed. Reg. 2836 (Jan. 23, 1984).

31.     Mr. Khosravi was a citizen of the United States at the time of his imprisonment

and torture.

32.     The definition of "torture" under the FSIA, derived from § 3 of the Torture

Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (Mar. 12, 1992),

codified at 28 U.S.C. § 1350 (note), includes:

> Any act, directed against an individual in the offender's custody or physical
> control, by which severe pain or suffering (other than pain or suffering arising
> only from or inherent in, or incidental to, lawful sanctions), whether physical or
> mental, is intentionally inflicted on that individual for such purposes as obtaining
> from that individual or a third person information or a confession, punishing that
> individual for an act that individual or a third person is committed or is suspected
> of having committed, intimidating or coercing that individual or a third person, or
> for any reason based on discrimination of any kind.

33.     While Mr. Khosravi was in Iran's custody and control, Iran intentionally

subjected Mr. Khosravi to eight months of severe pain and suffering, including solitary

confinement, physical and mental abuse, and threats against his life, all with the intent to obtain a

false confession and coerce his cooperation.  Iran's conduct constitutes torture as defined under

the FSIA.

34.     "Hostage-taking" under the FSIA, as derived from Article 1 of the United Nations

International Convention Against the Taking of Hostages, No. 21931 (Nov. 1, 1979), is defined

as follows: Any person who seizes or detains and threatens to kill, to injure or to continue to

detain another person (hereinafter referred to as the "hostage") in order to compel a third party,

namely, a State, an international intergovernmental organization, a natural or juridical person, or

a group of persons, to do or abstain from doing any act as an explicit or implicit condition for the

release of the hostage commits the offence of taking of hostages ("hostage-taking") within the

meaning of this Convention.

35.     Iran detained Mr. Khosravi on false espionage charges and threatened to kill, injure, and continue to detain Mr. Khosravi for eight months in an attempt to win money or other concessions from the United States. Iran's conduct was hostage-taking as defined under the FSIA.

36.     A foreign state is held vicariously liable for the acts of its officials, employees, or agents. 28 U.S.C. § 1605A(c)(4).

37.     Mr. Khosravi continues to suffer physical and psychological harm to this day as a result of his hostage-taking and torture by Iran.

## COUNT II

### (§ 1605A(c) CAUSE OF ACTION – ASSAULT AND BATTERY)

38.     Paragraphs 1 through 37 above are incorporated as if set forth herein.

39.     Iran committed or is responsible for numerous acts of assault and battery upon Mr. Khosravi during his confinement and torture.

40.     Under the FSIA, a foreign state stripped of its immunity "shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606.

41.     Iran is stripped of its immunity under the FSIA because of its acts of hostage-taking and torture, and is therefore liable for torts in the same manner and to the same extent as a private individual.

42.     Iran's actions were intentional and unlawful exertions of force directed toward Mr. Khosravi.  Not only did they create a reasonable fear of imminent peril or harm to Mr. Khosravi but they repeatedly inflicted intention and harmful contact with Mr. Khosravi.  Iran's conduct included intentionally and repeatedly threatening Mr. Khosravi's life, threatening bodily injury, and physically assaulting Mr. Khosravi.

43.     Mr. Khosravi suffered severe damages as a result of the assault and battery inflicted upon him by the agents and instrumentalities of Iran.

## COUNT III

### (§ 1605A(c) CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

44.     Paragraphs 1 through 43 above are incorporated as if set forth herein.

45.     Iran's use of solitary confinement, threats and physical abuse, and restrictions of Mr. Khosravi's contact with his family was intentional, reckless, extreme and outrageous.  It was designed to cause severe Mr. Khosravi severe emotional distress.   Iran's conduct is utterly intolerable in a civilized community and its actions caused severe emotional distress.

46.     Iran's treatment of Mr. Khosravi violated acceptable norms of treatment under both U.S. and international law, and was also for that reason extreme and outrageous.

47.     Iran's actions left Mr. Khosravi severely emotionally and psychologically damaged.

## COUNT IV

### (§ 1605A(c) CAUSE OF ACTION – FALSE IMPRISONMENT)

48.     Paragraphs 1 through 48 above are incorporated as if set forth herein.

49.     Mr. Khosravi was deprived of liberty without cause and against his will and without legal justification.  Iran's actions were without legal authority and were unreasonable and unwarranted under the circumstances.

50.     Iran held Mr. Khosravi despite knowledge that they had no basis to do so.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Farzad N. Khosravi respectfully requests that this Court grant him the following relief:

51.     As a result of the personal injuries he has suffered due to acts of torture and hostage-taking, Mr. Khosravi is entitled to economic damages for loss of earnings and compensatory damages for pain and suffering, totalling not less than $20,000,000, all of which are recoverable under the FSIA.  28 U.S.C. § 1605A.

52.     In addition to all appropriate economic and compensatory damages, Mr. Khosravi is entitled to punitive damages, in excess of $20,000,000 because Iran's acts were intentional, malicious, and performed deliberately to injure, damage, and harm Mr. Khosravi.

53.     Mr. Khosravi is entitled to a lien of *lis pendens* upon any real property or tangible personal property of the Defendant that is subject to attachment in aid of execution, or execution. 28 U.S.C. § 1605A(g).

54.     Mr. Khosravi further seeks costs, attorneys' fees, and such other relief as may be just and proper, including pre-judgment interest.

Dated: October 17, 2016

Respectfully submitted,

/s/ Danny C. Onorato
Danny C. Onorato, DC Bar No. 480043
Schertler & Onorato, LLP
1101 Pennsylvania Ave. NW, Suite 1150
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile:  (202) 628-4177
donorato@schertlerlaw.com

*Attorney for Farzad N. Khosravi*