UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **FARZAD N. KHOSRAVI**, | ) |
| Plaintiff, | ) |
| v. | ) Case No.1:16-cv-02066-TSC |
| **THE GOVERNMENT OF THE ISLAMIC REPUBLIC OF IRAN**, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Farzad Khosravi sued the government of the Islamic Republic of Iran under the Foreign Sovereign Immunities Act (FSIA), seeking money damages for injuries he suffered during his eight-month detention and torture in an Iranian prison. Khosravi moved for default judgment against Iran under Federal Rule of Civil Procedure 55(b)(2). (ECF No. 12.) To obtain a default judgment against a defendant under the FSIA, a plaintiff must establish the claim "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). The court "may not unquestioningly accept a complaint's unsupported allegations as true." *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 211 (D.D.C. 2012). However, an evidentiary hearing is not required; a "plaintiff may establish proof by affidavit." *Id.* at 212.

Based on the findings of fact set forth below, the court granted Khosravi's motion for default judgment and awarded $18,668,126.58 in damages. (ECF No. 18.)

### I.   FINDINGS OF FACT

Based on the undisputed evidence before it, the court finds the following facts.

Khosravi is a dual U.S.-Iranian citizen, born in Iran. (ECF No. 12-2, Khosravi Decl. ¶¶ 1, 5.) In 1980, the government of Iran arrested Khosravi for his open opposition to its policies

and placed him under house arrest for seven months. (*Id.* ¶ 3.) After Khosravi was released, the Iranian government continued to surveil and harass him. (*Id.* ¶ 4.) A year later, he escaped the country, and in September 1983 was granted political asylum in the United States. Ten years later he became a U.S. citizen. (*Id.* ¶ 5.)

In August 2012, Khosravi returned to Iran for a two-month visit to see family. (*Id.* ¶ 9.) Upon his arrival in Tehran, government officials took his American and Iranian passports. (*Id.* ¶ 11.) Khosravi spent two and a half years in Iran trying to get his passports returned, and, with the aid of counsel, finally was able to get them returned, although his Iranian passport had by then expired. (*Id.* ¶ 12.) When he went to apply for a new Iranian passport, Iranian officials repeatedly interrogated him. (*Id.*) Once he was able to obtain a new passport, he booked a flight to return to the United States. (*Id.* ¶ 13.)

A. **Detention and Interrogation**

When Khosravi arrived at the Tehran airport in May 2015 to board his return flight to the United States, agents from the Ministry of Intelligence (MOIS)[1] told him he could not leave the country and punched him in the face when he asked to see a court order. (*Id.* ¶ 13.) The agents then arrested him and told him he was charged with murder. (*Id.*) He was handcuffed, blindfolded and driven to Evin Prison. (*Id.* ¶¶ 14–16.) When he continued to ask what was happening, the agents told him that he was charged with espionage for sending secret information to a hostile government—the United States. (*Id.* ¶ 14.)

---

[1] MOIS is Iran's primary intelligence organization; in 2012, the United States designated it for human right abuses dating back to 2009. *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 150 (D.D.C. 2017) (citing U.S. Dep't of Treasury, *Treasury Designates Iran Ministry of Intelligence and Security for Human Rights Abuses and Support for Terrorism*, U.S. Dep't of Treasury Press Center (Feb. 16, 2012)).

The agents dragged Khosravi inside the prison, stripped him of his belongings, and placed him in a concrete cell that was no more than three feet by five feet. (*Id.* ¶ 16.) Khosravi later learned he was in Ward 209, a secret detention center operated by MOIS. (*Id.*) The cell had no light, bed, or toilet, and was infested with rodents and insects. (*Id.* ¶¶ 17–18.) Khosravi was fed no more than two meals each day, usually moldy bread and cheese, and his weight declined rapidly. (*Id.* ¶ 19.)

Khosravi was placed in solitary confinement for extended periods throughout his eight-month imprisonment. (*Id.* ¶ 27.) He was allowed one phone call, to his mother. (*Id.* ¶ 22.) When he told her he was in prison, a guard hung up the phone, beat him, and threw him back in his cell. (*Id.*)

After Khosravi had been imprisoned for a few days, he was removed from his cell, interrogated, and accused of being a U.S. spy. (*Id.* ¶ 20.) When Khosravi denied the allegations, he was struck repeatedly in the head until he lost consciousness. (*Id.*) When he awoke, he was in his cell, covered in blood; he received no medical treatment for his injuries. (*Id.* ¶ 21.) Over time, these interrogation sessions became routine and increasingly violent. (*Id.* ¶ 23.) When Khosravi maintained that he was in Iran only to visit family, his interrogators would shock him with an electric taser on his head, legs, and genitals and beat him with metal objects. (*Id.* ¶¶ 23–24.) His pleas for medical attention were ignored. (*Id.*) Guards also regularly told him that he would be executed and would never see his family again. (*Id.* ¶ 25.) Khosravi was interrogated for a total of more than 65 hours. (*Id.* ¶ 23.)

During his detention, Khosravi appeared in Iranian court three times. (*Id.* ¶ 28.) The first time, the judge accused him of being a U.S. spy, told him he would be executed, and scheduled his trial for April 12, 2016. (*Id.*) The second time, the judge sentenced him to eighty lashes for

the crime of consuming alcohol, to which he falsely admitted during interrogation. (*Id.* ¶ 30.) The third time, the judge again told him he would be executed. (*Id.* ¶ 31.)

After 251 days of imprisonment, Khosravi was released as part of a prisoner exchange with the United States. (*Id.* ¶ 33.) Iran released four prisoners in exchange for clemency for seven Iranians indicted or imprisoned in the United States for sanctions violations. (*Id.*) The United States also released frozen Iranian assets around the time of the exchange. (*Id.*)

### B. Injuries

#### 1. Physical and Psychological[2]

Khosravi suffered severe and lasting physical and psychological damage from the abuse he suffered during his imprisonment. He has permanent scars, chronic migraine headaches, lower back pain, reduced sensation in his limbs, weakened muscles, diminished reflexes, and numbness and tingling in his hands and feet. (*Id.* ¶¶ 35–36.) He also has acute joint pain and limited range of motion in his left leg, which prevents him from walking for more than thirty minutes without fatigue. (*Id.* ¶ 36.) Both his eyes are severely damaged, resulting in double vision and night blindness in his left eye. (*Id.* ¶ 37.) He sees a primary care physician, a neurologist, and an optometrist on a regular basis, and takes daily medication to manage the pain and other symptoms. (*Id.* ¶¶ 38–39.) Khosravi also suffers from post-traumatic stress disorder, depression, anxiety, and insomnia, for which he receives treatment. (*Id.* ¶¶ 42–43.)

Before his detention, Khosravi enjoyed many active hobbies, including volleyball, Taekwondo, bike riding and going to the gym. (*Id.* ¶ 8, 41.) He can no longer take part in these activities, and even walking is difficult for him. (*Id.* ¶ 41.) He is unable to continue working as a rug designer and repairer and is on disability. (*Id.* ¶ 40.)

---

[2] In addition to his declaration, Khosravi submitted records under seal. (*See* ECF No. 13.)

2. Economic

Before his detention, Khosravi's average yearly income was $56,250 from his job managing a carpet store and selling rugs online.  (*Id.* ¶ 6–7; *see also* ECF No. 12-1, Pl. Br., at 26.)  Khosravi estimates lost wages totaling $181,387 from October 27, 2012, through January 17, 2016, when he was released from prison.  (Khosravi Decl. ¶ 6–7; *see also* ECF No. 12-1, Pl. Br. at 26.)  Since he returned to the United States, Khosravi's medical expenses between January 2017 and June 2018 totaled $12,679.34.  (Khosravi Decl. ¶ 44.)  He can no longer work because of his permanent physical and emotional injuries.  (*Id.* ¶ 40.)

**C. Purpose of Detention**

Khosravi's detention conforms to the Iranian government's well-documented "pattern and practice of behavior towards Iranian–American dual citizens, in which illegal actions were directed against such dual citizens for political purposes of the Iranian regime."  *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 64 (D.D.C. 2015) (quoting expert report of Mehdi Khalaji, a Senior Fellow at the Washington Institute for Near East Policy).  These detentions are designed to "coerc[e] . . . false confessions that they had taken actions against the Iranian state on behalf of the American government," to use them "as leverage in the U.S.-Iranian nuclear negotiations," and to "obtain release of Iranians in prison in the United States."  *Hekmati v. Islamic Republic of Iran*, 278 F. Supp. 3d 145, 150 (D.D.C. 2017) (quoting expert report of Mehdi Khalaji, a Senior Fellow at the Washington Institute for Near East Policy).  Khosravi was one of four American prisoners released in exchange for seven Iranians who were imprisoned or indicted in the United States.  (Khosravi Decl. ¶ 33.)

### D. Procedural History

Six months after his release, Khosravi timely filed suit against Iran under the FSIA, 28 U.S.C. § 1605A, alleging that Iran's actions during his eight-month detention constituted torture and hostage taking, entitling him to compensatory damages. Khosravi served Iran using the procedure set forth in 28 U.S.C. § 1608(a)(4), and the U.S. Department of State confirmed that Iran was served on February 7, 2017. (ECF Nos. 4–7.) After Iran failed to respond to the Complaint, the Clerk entered a default pursuant to Federal Rule of Civil Procedure 55(a). (ECF No.10.) Khosravi then timely moved for default judgment under Federal Rule of Civil Procedure 55(b). (ECF No. 12.)

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

Foreign states are generally immune from suit in U.S. federal court. *See* 28 U.S.C. § 1604. The FSIA provides the sole basis for jurisdiction over a foreign state in a U.S. court. *See* 28 U.S.C § 1330. Khosravi asserts jurisdiction under 28 U.S.C. § 1605A—the terrorism exception to a foreign state's jurisdictional immunity.

#### 1. Subject-Matter Jurisdiction

A plaintiff may establish subject-matter jurisdiction under this exception by showing that the foreign state lacks immunity and that his claim may be heard in a U.S. court. *See* 28 U.S.C. § 1605A(a)(1)-(2).

##### i. Immunity

Under 28 U.S.C. § 1605(a)(1), a foreign state loses its immunity where (1) "money damages are sought" (2) "against a foreign state" for (3) "personal injury or death" that (4) "was caused" (5) "by an act of torture [or] . . . hostage taking." 28 U.S.C. § 1605A(a)(1).

Khosravi's claims meet all five conditions. First, he seeks only monetary damages. (ECF No. 1, Compl., ¶¶ 51–53.) Second, he filed suit against Iran. (*Id.* ¶ 3.) Third, Khosravi alleges personal injuries including physical injury and mental anguish. (*Id.* ¶¶ 24–25.) Fourth, the Iranian Ministry of Intelligence caused his injuries. (*Id.* ¶¶ 16–19 (identifying MOIS as perpetrator); *see also Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 59 (D.D.C. 2007) (holding MOIS "must be treated as the foreign state itself").) Fifth, as explained in detail below, under the definition set forth by FSIA, Iran both tortured Khosravi and held him hostage.

a. Torture

FSIA adopts the definition of torture provided in the Torture Victim Protection Act, 28 U.S.C § 1605A(h)(7), which states that torture is

> (1) . . . any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind; and
>
> (2) mental pain or suffering refers to prolonged mental harm caused by or resulting from . . . the intentional infliction or threatened infliction of severe physical pain or suffering;

Torture Victim Protection Act of 1991 (TVPA), Pub. L. No. 102–256, 106 Stat. 73 (Mar. 12, 1992), *codified at* 28 U.S.C. § 1350 (note).

The D.C. Circuit has explained that to constitute torture, conduct must be "extreme, deliberate and unusually cruel . . . , for example, sustained systematic beating, application of electric currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain." *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 92–93 (D.C. Cir. 2002) (citation omitted). Under the FSIA, torture can occur only when the production of

pain is purposive, and not merely haphazard. *Id.* at 93. In order to lose its sovereign immunity, a foreign state must impose suffering cruelly and deliberately. *Id.* at 93.

Applying *Price*, courts have found torture to include providing victims with "inadequate rations of food," forcing them "to live in unsanitary conditions," and subjecting them to "individual threats of death, threats to kill others, [and] severe beatings." *Moradi*, 77 F. Supp. 3d at 68 (collecting cases).

The court finds that the physical and mental injuries Iranian interrogators inflicted on Khosravi, as well as the conditions in which he was held, constitute torture. His interrogators subjected him to physical and mental pain, beating him with bats and metal objects and shocking him with an electric taser. (Khosravi Decl. ¶¶ 20–24.) When he was not being interrogated, he was locked inside a small cell infested with rodents and insects. (*Id.* ¶¶ 15–18.) He was deprived of edible food and medical attention for his many injuries. (*Id.* ¶¶ 18–19.) This abusive treatment was not simply the use of excessive force against a prisoner; the violent interrogations were cruel and deliberate, with the intended purpose of eliciting a false confession. *See Price*, 294 F.3d at 92–93. The court therefore concludes that Khosravi was the victim of torture and that Iran is not entitled to sovereign immunity.

b. Hostage-Taking

The FSIA adopts the definition of hostage-taking in Article I of the International Convention Against the Taking of Hostages. 28 U.S.C § 1605A(h)(2). Hostage taking occurs when a person "seizes or detains and threatens to kill, to injure or to continue to detain another person in order to compel a third party. . . to do or abstain from doing any act as an explicit or implicit condition for the release of a hostage." *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 234 (D.C. Cir. 2003) (quoting Art. 1, ICATH, U.N. GAOR, Supp.

No. 39, U.N. Doc. A/34/39 (1979)). "The essential element of [a] hostage-taking claim is that the intended purpose of the detention be to accomplish . . . [some] third-party compulsion." *Id.* at 234–35 (citing *Price*, 294 F.3d at 94).

Khosravi contends that Iran detained him in order to force the U.S. to release Iranian prisoners. (Pl. Br. at 18.) He established that Iran leveraged his detention and that of three other Americans to secure release of seven Iranians imprisoned or indicted for sanctions violations. (Khosravi Decl. ¶ 33.) Because Khosravi's release was conditioned on the United States' release of Iranian prisoners, his detention constitutes hostage taking. *See Abedini v. Gov't of Islamic Republic of Iran*, 422 F. Supp. 3d 118, 131 (D.D.C. 2019) (finding hostage-taking when plaintiff's release was conditioned on the United States' release of Iranian prisoners). The court therefore concludes that Khosravi was the victim of hostage-taking and that Iran is not entitled to sovereign immunity.

        *ii. Authority to Hear Claim*

Subsection 1605A(a)(2)(A) permits a federal court to hear a claim brought under this section if: 1) the foreign state where the act occurred was designated a state sponsor of terrorism at the time of the act and when the claim was filed, 2) the claimant or victim is a U.S. national, and 3) the claimant gave the foreign state an opportunity to arbitrate the claim. 28 U.S.C. § 1605A(a)(2)(A). Each of these conditions is satisfied in this case. Iran has been designated a state sponsor of terrorism since January 1984 and was so designated both at the time Khosravi's detention and when he filed suit. *See* U.S. Dep't of State, *State Sponsors of Terrorism*, available at http://www.state.gov/j/ct/list/c14151.htm (2017); *see also Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 30 (D.D.C. 2020). Khosravi is a U.S. citizen and therefore a U.S. national as defined in § 1605A(h)(5). And Khosravi included an arbitration offer in the documents served

9

on Iran. (ECF No. 7.) This court therefore has subject-matter jurisdiction pursuant to 28 U.S.C. § 1605A.

        2. <u>Personal Jurisdiction</u>

The court may exercise personal jurisdiction over a foreign state if service of process is properly effectuated under 28 U.S.C. § 1608(a). *See, e.g.*, *Schubarth v. Fed. Republic of Germany*, 891 F.3d 392, 397 n.1 (D.C. Cir. 2018). As set forth above, Khosravi properly served Iran. (*See* ECF No. 7.)

   **B. <u>Liability</u>**

The FSIA provides a federal cause of action to U.S. nationals for personal injury or death caused by acts described in subsection (a)(1). 28 U.S.C. § 1605A(c). Khosravi is a U.S. national and therefore has a federal cause of action under the FSIA. Because the court has jurisdiction over Khosravi's claims under § 1605A(a)(1), all of the essential elements for imposing liability under § 1605A(c) are likewise established. This is because 1605A(c) expressly incorporates the elements necessary to waive a foreign state's immunity. Essentially, liability under § 1605A(c) exists whenever the jurisdictional requirements of § 1605A(a)(1) are met. *Kilburn v. Islamic Republic of Iran,* 699 F. Supp. 2d 136, 155 (D.D.C. 2010) ("Although an analysis of a foreign sovereign's potential immunity and liability should be conducted separately, the elements of immunity and liability under § 1605A(c) are essentially the same in that § 1605A(a)(1) must be fulfilled to demonstrate that a plaintiff has a cause of action.").

Accordingly, because the court has determined that Iran, acting through its agents, took Khosravi hostage and tortured him within the meaning of § 1605A(a)(1), Iran is liable under § 1605A(c) for any personal injuries that torture and hostage taking caused.[3]

## C. **Damages**

As authorized by § 1605A(c), Khosravi seeks compensatory damages for pain and suffering and economic harm, as well as punitive damages. *See* 28 U.S.C. § 1605A(c).

1. Compensatory Damages

To recover compensatory damages in a FSIA case, a plaintiff must prove that "the consequences of the defendants' acts were reasonably certain to occur, and they must prove the amount of damages by a reasonable estimate." *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003).

i. *Pain and Suffering*

Khosravi seeks $2.51 million in damages for his pain and suffering while imprisoned. He has presented extensive evidence of his mental and physical torture during his 251-day imprisonment. Because pain and suffering are "obviously" reasonable consequences of torture, *Price v. Socialist People's Libyan Arab Jamahiriya*, 384 F. Supp. 2d 120, 134–36 (D.D.C. 2005) (*Price III*), Khosravi is entitled to damages for his pain and suffering, during and since his detention.

In hostage-taking and torture cases, courts in this district typically award $10,000 per day of captivity to compensate for injuries sustained while detained. *Abedini*, 422 F. Supp. 3d at 136–37 (collecting cases). The court finds this is a reasonable estimate for compensation for

---

[3] Khosravi also asserted several state law claims. (Compl. at 19.) Because he is a U.S. citizen, those claims are "redundant" of the federal law claim and "do not provide [] any additional right to recover." *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 89 (D.D.C. 2018).

Khosravi's pain and suffering and awards him $2.51 million for pain and suffering while imprisoned.

Khosravi also seeks $10.04 million to compensate for his post-release injuries, including future pain and suffering. (Pl. Br. at 24.) However, the case upon which he relies, which resulted in a $10 million award, involved a longer period of detention (335 days) and lengthier post-release pain and suffering (39 years between release and award) than Khosravi suffered. *See Massie v. Gov't of the Democratic People's Republic of Korea*, 592 F. Supp. 2d 57, 66, 74 (D.D.C. 2008). By contrast, the court in *Moradi* awarded $5 million in post-release pain and suffering damages to a plaintiff who was held for 168 days, and 7 years had elapsed since his release. Here, while Khosravi was imprisoned for 251 days, this award comes two years after his release. Therefore, the court concludes that $5 million is the appropriate amount of damages for Khosravi's post-release pain and suffering.

> ii. *Economic*

Khosravi seeks economic damages of over $1.8 million, including loss of earnings and out-of-pocket costs for medical treatment. (Pl. Br. at 25.)

Khosravi estimates his lost earnings total over $315,000. "As a general rule, lost earnings — past and future — are compensable economic damages" under the FSIA. *Moradi*, 77 F. Supp. 3d at 71 (citing Restatement (Second) of Torts § 906). Khosravi earned approximately $154.11 per day before his detention, and lost wages for approximately 1,177 days (including his time stranded in Iran before his detention). Therefore, his lost wages were $181,387.47. In addition, Khosravi has been unable to work since his release because of his injuries, and therefore estimates lost wages of $134,229.81 since his release. Accordingly, the court finds his lost wages total $315,617.28.

12

Khosravi also estimates that his lost future earning capacity exceeds $1.2 million. He has shown through extensive evidence that he will not work again due to his injuries. Therefore, the court concludes that his lost future earning capacity, based on his prior earnings of $56,250 annually and future earnings for 21.7 years[4], totals $1,220,625.00. (Khosravi Decl. ¶ 28; *see also* Pl. Br. at 26.)

Khosravi's economic losses also include his out-of-pocket costs for ongoing medical treatment and medical bills already incurred for injuries sustained during his detention. Khosravi's medical expenses for treatment he has already received amount to $12,679.34. (Khosravi Decl. ¶ 44.) Because of his permanent injuries, Khosravi estimates that he will incur $275,141.67 in future costs for medical and mental health treatment.[5]

Each of these costs are the result of Iran's unlawful conduct, are reasonably estimated, and were incurred, or will likely incur in the future. Accordingly, the court awards $1,824,063.29 to compensate Khosravi for his economic damages.

2. Punitive Damages

Finally, Khosravi seeks $300 million in punitive damages. Courts consider four factors in determining an appropriate award of punitive damages: "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants." *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 55–56 (D.D.C. 2012) (internal quotations omitted). While "societal interests in punishment and deterrence warrant imposition of punitive sanctions,"

---

[4] Based on the U.S. Department of Health and Human Services National Vital Statistics System, Khosravi estimates he will live another 21.7 years. (Pl. Br. at 26.)

[5] Khosravi estimates this amount based on his past medical expenses and his projection of living another 21.7 years. (Pl. Br. at 26.)

*Onsongo v. Republic of Sudan*, 60 F. Supp. 3d 144, 153 (D.D.C. 2014), the court finds Khosravi's proposed amount excessive.

Although other courts have imposed such large awards, those cases involved plaintiffs who were impacted by state-funded terrorist activities of third-party organizations. *See, e.g.*, *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 30-31 (D.D.C. 2001) (describing actions executed by terrorist organization materially supported by Iran). The large punitive damages awarded in those cases represented a multiple of the amount of financial support Iran or other states provided. Here, as in *Moradi*, the Khosravi's detention and torture was committed by the Iranian government itself—MOIS. In such situations, courts have declined to base an award on Iran's funding of its own ministry, instead awarding an amount in punitive damages that is equivalent to the amount of compensatory damages. *See Moradi*, 77 F. Supp. 3d at 73 ("Here, the detention and torture was carried out directly by Iranian authorities, so the Court does not agree that the punitive damages award should be based upon Iran's funding of its Ministry of Information and Security."). The court will adhere to that formula and award punitive damages of $9,334,063.29. *See id*.

### III.   CONCLUSION

For the stated reasons, the court granted Khosravi's motion for default judgment and the above amounts in damages. A corresponding Order issued separately. (ECF No. 18.)

Date: August 21, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge